Johnson, J.
The new council, to be organized, consisted pf nine members holding over, and nine members elect. They assembled at the proper time and place. For the purpose of organization, the mayor was ex offieio president, authorized to swear in the new members, call the assembly to order, and preside during the organization.
The nine new members were duly sworn; the councilmen, all of whom were present, were called to order by the mayor, who announced that the first business in order was the organization of the new council. The Revised Statutes, sections 1675 and 1676 relate to this subject. No business can be transacted until such organization. As all the members were present no question as to a quorum for the purpose of organization arises. The statute made it the imperative duty of the eighteen members then present and qualified to act, to “ forthwith proceed to organize by electing a president and president pjro tempore, from their own number, a clerk, and such other officers as by ordinance may be provided.” By section 1676, it is further provided, that in cities of the second class, the mayor shall be ex ojfieio president during such organization, and in case of a tie vote in the choice of an officer at such organization, the mayor shall give the casting vote.
*230 Two questions made during the proceedings of the council, and in this court are:
1st. "Was it legal to elect by a motion?
2nd. Was the relator legally elected?
The statute contemplates an election, and that each member of the electing body shall have a vote in the choice of any officer, and in case of a tie vote, that the mayor shall give the casting vote.
The statute provides that in the adoption of ordinances, resolutions and by-laws the vote shall be taken by yeas and nays, and be recorded on the journal; and no contract, agreement, or obligation shall be entered into, except by ordinance or resolution, nor any appropriation of money, except by ordinance. Rev. Stats. § 1693.
In these specified cases, and perhaps others, the mode of voting is by yeas and nays, but the statute, is silent as to the mode of voting in the organization of a council.
“ A vote is but the expression of the will of a voter; and whether the formula to give -expression to such will, be a ballot or viva voce, the result is the same; either is a vote.” People v. Pease, 27 N. Y. 45.
In the case at bar, the vote was by yeas and nays, on the adoption of a motion to elect the relator clerk. It is essential to a valid election that all who are present, and are constituent members of the elective body, shall have an opportunity to vote. They all in this respect stand upon equal footing. As there was but one candidate in nomination, the vote on the motion was a vote for or against that candidate. If a majority voted for the motion it was a clear expression that the person named in the motion was the choice of a majority of those entitled to vote. As no mode of voting at such an election is prescribed by law, any mode not forbidden by law which insures to each member the right to vote, and by which the will of the majority can be fairly ascertained, may be adopted.
The mode adopted was the one prescribed by statute for the transaction of the most important business of the council. We see no reason why it is not a fair mode of ascertaining the choice of the council. Certainly this method, by placing the *231 yeas and nays upon record, tended to a higher degree of accountability than by a ballot, though that mode of voting might have been adopted. If any member had a candidate to propose, he could have moved to amend by inserting his name, and on this amendment the vote of each member could have been had.
No question is made but that the relator was qualified to be elected, and for aught that appears, the objections were not against him personally, but to the mode of taking the vote. If a majority of the,eighteen had voted against the motion, that would have been a clear expression of the will of the council against the relator. It is equally clear that if a majority voted for the motion he would be elected. "We hold, therefore, that under the circumstances of this case, the mode of electing by motion was authorized by law.
2. "Was the relator legally elected?
All the members were present and duly qualified to act. All entered upon the duty of electing the officers necessary to an organization. They proceeded to discharge this duty, but differed as to the' mode of voting. The mayor decided, correctly as we have seen, that it was proper to elect by motion.
Nine members, being one less than a quorum, and less than a majority of those present, voted for the motion, and nine refused to vote, protesting against that mode of electing. The relator was eligible to the office, the mayor declared him duly elected, and the nine who did not vote protested against this decision. It does not appear, except inferentially, that those not voting and protesting had any objection to the relator, or that they expressed any preference for another, but only as to the mode of his election and the number of votes by which he was elected, there being less than a quorum voting. Until an organization was effected the powers of members were limited to the duty of electing the proper officers. After organization and in the transaction of business, the council, or the majority of those composing it, may determine when to act as well as how to act. Here the law determines when ihe council shall act. The only discretion the members have is as *232 to the mode of electing, and the persons to he elected. The council is charged with an important public trust. It is essential to the exercise of that trust that a speedy organization should be had. “ They, (the members present if a quorum,) shall forthwith proceed to organize,” is the unmistakable language of the statute.
Where, as in this case, the question involved is difficult of solution, any system of parliamentary tactics, or any conduct of members, however well meant, calculated to defeat such an organization, or any construction of the statute leading to such result, will not be favored unless clearly required by the terms of the law.
The body was duly constituted to hold an election of clerk; only one candidate was before it for the votes of members; no question entitled to precedence was before the body; the election was being held, and those declining to vote must .be deemed to acquiesce in the choice of those who do, though protesting against the mode of voting, the decision of the Mayor that there was a quorum and that the relator was elected. This is the settled rule of the common law, as to elections in coiqrorate bodies. Willcock on Corporations, section 546, says: “ After an election has been properly proposed, whoever has a majority of those who vote, tlie assembly being sufficient, is elected, although a majority of the entire assembly altogether abstain from voting / because their presence suffices to constitute the elective body, and if they neglect to vote, it is their own fault, and shall not invalidate the act of the others, but be construed an assent to the determination of the majority of those who do vote. And such an election is valid, though the majority of those whose presence is necessary to the assembly protest against any election at that time, or even the election of the individual who has the majority of votes. The only manner in which they can effectually prevent his election is by voting lor some other qualified person.”
The same rule is stated with equal force and clearness in the text of Grant on Corporations, 71*; Angelí & Ames on Corporations, §§ 126, 127; 2 Kyd on Corporations, 12, 13.
These citations are high authority and should suffice. We *233 have, however, carefully examined the authorities cited in support of the text as well as numerous other cases. They constitute an unbroken chain, and leave no room for doubt as to what the rule is as settled by the highest authority both in England and in this country. Some of these cases we will notice. Oldknow v. Wainwright, or Rex v. Foxcraft, 2 Burr 1017, was a feigned action to try the right of election to the office of town clerk of Nottingham; that is, whether one Thomas Seagrave was duly elected clerk. The whole number of electors was twenty five, all of whom were summoned to an election. Twenty-one assembled at the time and place. Thomas Seagrave was nominated. No other person was put in nomination. Nine of the twenty-one voted for him, but twelve of them did not vote at all, and eleven of them protested against any election at that time,'because, • as they claimed, the office was already filled, and one “ suspended his vote.”
“ Lord Mansfield saw no doubt in the case,” so the report says. “ Here was an assembly duly summoned, one candidate was named, no other was named, they had no right to stop in the middle of the election.”
Upon a re-argument, Lord Mansfield confirmed his former opinion. “ He said the protesting electors had no way to stop the election when once entered upon, but by voting for some other person than Seagrave, or at least against him; whereas here they had only protested against any election at that time.” , •
Mr. Justice "Wilmot cited a case where, out of eleven voters, five voted and six refused, and the court had held, “ that the six virtually consented.” He also cited several other cases to the same point.
Lord ,Mansfield added: “ whenever electors are present and don’t vote at all (as they have done here,) they virtually acquiesce in the election made by those who do.”
It would be difficult to find a case more like the one at bar.
This case was cited with approval by Denman, C. J., in Gosling v. Veley, 53 E. C. L. (7 A. & E.) 439 ; and again, when the latter case was before the House of Lords, 4 H. of L. Cases, 679.
*234 In all the learned opinions in that justly celebrated ease, the doctrine announced by Lord Mansfield was approved, when limited to cases of elections; but it was held that where the question was the levy of a tax, or the transaction of other corporate business, a majority of those present must vote for it. In his opinion in that ease, Baron Martin said (p. 739): “ But I think the proceedings for the election of members of a representative body or of corporate officers, are substantially different from the proceedings of the body itself in the transaction of business.”
As to this distinction between bxosvness of a corporation and an election, Lord Mansfield is cited, as saying in King v. Monday, that there was no way of defeating a candidate being voted for at a legal election, but by voting for some one else; and he adds : “ But in the business of a corporation it is a different thing.” The same question was again before the court, in King v. Bellringer, 4 Term, 810. In that case Lord Kenyon says, in speaking of an election by a definite body: “ It is not necessary that they should all concur in the election or others act done; but they must be present, and the election at such a meeting is in point of law an election by the whole.”
This principle is adopted in Inhabitants of the First Parish v. Stearns, 21 Pick. 148. The court there say, in speaking of corporate elections and of the cases decided as to the effect of not voting: “ The principle which runs through them all, and is founded in common sense as well as supported by authority is that a majority of the legal, voters who chose-to vote always constitutes an election. It has been holden that where a majority expressly dissent, but do not vote, the election by the minority is good.” See also Booker v. Young, 12 Gratt. 307, where the case of Oldknow v. Wainwright is cited with approval.
So far as we have been able to learn, the doctrine laid down by Lord Mansfield and repeated in all the text-books has never been questioned.
In holding, as we do, that the relator was duly elected, we do not contravene the well-settled rule, that in all deliberative *235 bodies, tbe majority must govern. We simply hold, that the law cast upon each member of council—the duty of voting for some one—that by being present and keeping silent when eallecL on to vote, they are presumed to acquiesce in the vote given. This acquiescence creates the presumption that the choice of their voting is the choice of a majority of all present and not voting.
It is claimed by counsel for defendant that it is the well-established rule of parliamentary practice that the mayor could not go beyond the roll-call, which shows only nine present, to determine that there was a quorum. This rule is claimed to be that “ When the roll-call discloses the absence of a quorum, the chair cannot go o-utside of the record in deciding as to the presence of a quorum.” Const. Man. & Digest, 2d Session, 46th Congress, 338. The same Digest, page 103, lays down the rule, as quoted from 2 Hastsell, 125, 126 (a very high authority on this subject), as follows:
“ And whenever, during business, it is observed that a quorum is not present, any member may call for the house to be counted, and being found deficient, business is suspended.”
Whether the rule relied on is a rule adopted by the house of representatives or is a decisioji upon parliamentary law made by the speaker, we are not advised, nor is it necessary to inquire, as no such rule is made part of the law governing municipal corporations. We may add that we do not go outside of the record of the council to learn that all the members were actually present.
We are not called on to discuss parliamentary rules which are adopted by deliberative bodies for the convenient and orderly dispatch of business. They form no part of the statute laws of the state.
In the absence of any statute making such a rule part of the law of the land, we must look to the reason and object of the statute as construed in the light of the well-settled principles of the common law.

Judgment for the relatw.

Boynton, C. J., was absent.